## MATTER OF HUNG

### Application for Classification as Refugee

### A-12265468

*Decided by Regional Commissioner March 30, 1967*

Applicant, a 25-year-old native of Hong Kong and British subject, who fled China in 1949 with her parents when the Communists took over their district, residing in Hong Kong 6 or 7 years immediately prior to coming to the United States where she has been physically present since her admission as a student in 1960 while still a minor, whose parents and brothers and sisters have been paroled into this country from Hong Kong as refugees, and who is unable to obtain a visa to reside temporarily in Canada with her student husband, is a refugee who has not been firmly resettled in another country for the purposes of refugee classification under the proviso to section 203(a)(7) of the Immigration and Nationality Act, as amended.

IN BEHALF OF APPLICANT:  Joseph S. Hertogs, Esquire
580 Washington Street
San Francisco, California  94111

This case comes forward on certification by the District Director, San Francisco who on January 26, 1967 denied applicant's motion to reopen and reconsider her application for adjustment of status as a permanent resident pursuant to section 245 of the Immigration and Nationality Act, as amended. In his order of January 26, 1967 the District Director stated in part as follows:

Title 8, Code of Federal Regulations, 103.5, requires that a motion to reopen or reconsider state new facts to be proved or the reasons for reconsideration and that they be supported by affidavits or other evidentiary material. The instant motion seems to be lacking in this respect. The facts show that the applicant did marry a Peter Chiang on May 5, 1966, who presently is a student in Canada. According to the record, the applicant's husband has no status in the United States. It has been established that this applicant was born in Hong Kong, B.C.C. and is now a citizen of Hong Kong. An applicant's nationality *per se* is not a basis for finding the applicant ineligible under the proviso on the ground that he is able to return to the country of nationality. However, the matter of nationality may be a pertinent consideration along with other factors in determining whether the alien has become firmly settled in a foreign country other than the one from which she fled. Since the applicant's husband is residing in Canada and the applicant is a British subject, it is doubtful she would encounter any

difficulty in taking up residence with her husband. Moreover, a marriage has been defined in law "as a contract by which a man and a woman, capable of entering into such contract, mutually engage with each other to live their whole lives together in the state of union which ought to exist between a husband and wife."

It is the view of this office that the applicant has been firmly resettled based upon the above facts, and is therefore not qualified for adjustment under the proviso of section 203(a)(7).

The above view as to the applicant's being "firmly resettled" cannot rest on the factual basis asserted. Neither the belief that the applicant could probably join her recently-married husband in Canada nor the obligations arising from a marriage contract, support such a finding. Thus, the District Director's holding must be rejected.

The applicant, a 25-year-old married female, a native of Hong Kong, B.C.C., was admitted to the United States at Honolulu on September 4, 1960 as a nonimmigrant student to attend Napa Senior High School, Napa, California. She received several extensions of stay, the last expiring on June 2, 1966 with a voluntary departure date of November 15, 1966. On April 22, 1966 she filed an application for status as permanent resident pursuant to section 245 of the Immigration and Nationality Act, as amended.

On May 27, 1966 a petition executed in the applicant's behalf by her father was approved by this Service according her preference under section 203(a)(2) of the Act, as amended, as the unmarried daughter of a lawful resident alien. Approval of the petition was revoked pursuant to 8 CFR 205.1 when the applicant subsequently informed this Service that on May 4, 1966, in Las Vegas, Nevada, she had married Peter Chiang also known as Kai Leung Chiang, a native of Hong Kong. With this action, her status became that of a nonpreference immigrant. As no visa was readily available, her application for status as a permanent resident was denied by the District Director on October 14, 1966. Concurrently with the denial, attorney of record was advised to have the applicant file an application for status as a refugee under the proviso to section 203(a)(7) of the Act as amended. Such an application was submitted on November 23, 1966.

Section 203(a)(7) of the Immigration and Nationality Act, as amended, provides, so far as pertinent here:

Conditional entries shall next be made available by the Attorney General, pursuant to such regulations as he may prescribe and in a number not to exceed 6 per centum of the number specified in section 201(a)(ii), to aliens who satisfy an Immigration and Naturalization Service officer at an examination in any non-Communist or non-Communist-dominated country, (A) that (i) because of persecution or fear of persecution on account of race, religion, or political opinion they have fled (I) from any Communist or Communist-dominated country or area, . . . and (ii) are unable or unwilling to return to such coun-

179

try or area on account of race, religion, or political opinion, and (iii) are not nationals of the countries or areas in which their application for conditional entry is made; . . . *Provided*, That immigrant visas in a number not exceeding one-half the number specified in this paragraph may be made available, in lieu of conditional entries of a like number, to such aliens who have been continuously physically present in the United States for a period of at least two years prior to application for adjustment of status.

The record establishes that the applicant fled from Communist China with her parents. However, in *Matter of Sun*, Int. Dec. No. 1685, it has been held that an alien who fled from Communist China, but thereafter became firmly resettled is, by virtue thereof, ineligible for classification under the proviso to section 203(a)(7). Thus, it must also be determined whether such resettlement has been effected in the present instance.

In opposition to the District Director's denial of January 26, 1967, counsel submits that new facts and evidentiary material are set forth in the applicant's application for refugee status; that her parents, natives of China, and six brothers and three sisters, born in Hong Kong, were all documented under the Hong Kong Parolee Program and subsequently were granted adjustment of status pursuant to the proviso to section 203(a)(7) and section 245 of the Act, as amended.

Counsel further submits that the applicant was at no time "firmly resettled" in Hong Kong; that she has never been to Canada nor had any type of domicile or residence in that country; and that her husband upon completion of his studies in the United States proceeded to Canada only to further his education and was admittted to that country in a temporary student status.

The entire record has been carefully reviewed and considered. One of the major refugee programs which has been administered by this Service was that of Chinese refugees in Hong Kong who fled from the mainland. On May 23, 1962, the President directed steps be taken to parole into the United States several thousand Chinese from Hong Kong under section 212(d)(5) of the Immigration and Nationality Act to assist in alleviating conditions in that colony caused by the influx of persons fleeing from Chinese tyranny on the mainland of China. (Press conference of May 23, 1962, Published Papers of the President of the United States, John F. Kennedy, 1962, p. 431). In discussing the use of parole authority, Representative Michael A. Feighan, Chairman of Subcommittee No. 1 of the House Judiciary Committee, observed "that the conditions of crisis and dire emergency were present when executive authority was exercised in the case of . . . Chinese refugees in Hong Kong." (Study No. 1, House Judiciary Committee, 1964, page 92; Mr. Feighan's statements in announcing this report. Congressional Record of February 5, 1964, page 1877.)

The applicant is a 25-year-old married female, a native of Hong Kong and according to her passport, a "British subject citizen of the United Kingdom and colonies", who fled China in 1949 with her parents when the Communists took over their district. She resided in Hong Kong six or seven years immediately prior to coming to the United States in 1960 as a student. In support of counsel's statements that the applicant's parents, brothers and sisters were admitted to the United States under the Hong Kong Parolee Program and that their status subsequently was adjusted to that of permanent residents, the record evidences that the status of the applicant's father (Yue Hing Yee SIN, A13 684 413) was so adjusted by the District Director at San Francisco, March 28, 1966. The applicant was not documented as a refugee and did not enter the United States under the program along with her family as she previously had entered as a student. However, the record evidences that she was registered on the waiting list of intending immigrants at the American Consulate General, Hong Kong as of 1952, at which time, and at the time of her entry into the United States, she was an unemancipated minor and member of the household of her parents, whose refugee status has been recognized. It does not appear from the record that the applicant now has any close family ties or equities in Hong Kong and would be separated from her parents, brothers and sisters should she have to return to that country. There is no evidence that she held any official position in the Colony or that she otherwise reestablished herself there after fleeing China. Applicant's profession as indicated by her passport is "Accountant". The applicant has stated under oath to an officer of this Service that she has never lived in Canada and is unable to obtain a visa to reside temporarily with her student husband in that country.

In view of the foregoing, we concluded that the applicant has not become firmly resettled within the meaning or intent of the law, either in Hong Kong or Canada and that she qualifies for refugee classification. Her application for adjustment of status was denied solely because of the District Director's decision that a visa number is not immediately available to the applicant. The approval of her application for refugee classification overcomes that ground. Accordingly, the following orders will be entered.

**ORDER:** It is ordered that the application for classification as a refugee under the proviso to section 203(a)(7) of the Immigration and Nationality Act, as amended, be approved.

*It is further ordered* that the application for status as a permanent resident pursuant to the proviso to section 203(a)(7) and section 245 of the Immigration and Nationality Act, as amended, be granted.

181